LAW OFFICES OF MARIANA L. HANNA
MARIANA L. HANNA, CSB: 230127
MLHLAWOFFICE@YAHOO.COM
402 West Broadway, Suite 1730
San Diego, CA 92101
619-234-3635

RAMIREZ-SMITH LAW
*Proposed Pro Hac Counsel for Petitioner*
JACOB ROURK, ISB: 12585
JROURK@NRSDT.COM
444 W. Iowa Ave.
Nampa, ID 83686
208-461-1883

*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Manuel Salvador DIAZ GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>James Janecka, Warden of the Adelanto ICE Processing Center; Thomas Giles, Director of the Los Angeles U.S. ICE Field Office; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, U.S. Attorney General;<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Manuel Salvador Diaz Gonzalez, a native and citizen of Mexico obtained lawful permanent residency in the United States in 1994, petitions this Court for a writ of habeas corpus, having been detained now since February 10, 2026, and kept at the Adelanto ICE Processing Center in Adelanto, California.

2. Petitioner left the United States to Mexico on an approximately one-week trip to take his mother to a doctor there on in early January of this year.
3. Petitioner provides crucial caretaking to his United States citizen mother, who has dementia and diabetes, and his United States citizen father, who can not walk or use the bathroom without assistance. He is pursuing cancellation of removal available to certain permanent residents the removal of whom would case extreme hardship to their United States citizen parents.
4. When Petitioner returned from this visit to Mexico, immigration officers determined a 2007 conviction for possession of marijuana made him inadmissible. His green card was confiscated, and he was taken into immigration custody.
5. Petitioner was charged as an arriving alien, and taken into custody without bond available.
6. After 6 months, Petitioner was provided a *Rodriguez* hearing on August 26, 2026, wherein the government bore the burden to prove by clear and convincing evidence that he was a current danger or a flight risk such that his ongoing detention was necessitated.
7. The government presented evidence that Petitioner had been convicted of 4 DUIs over his approximately 30 years present, the most recent of which was 5 years ago. Petitioner presented evidence of his rehabilitation: that he had attended Alcoholics Anonymous meetings to learn from the experiences of others, that he began attending church and adhering closely to his faith, that he had complied with all Court orders in that 5-year-old DUI and not been charged with any crime since, and that he responsibly now cares for his ailing parents.
8. The judge presiding over the bond hearing denied Petitioner release on bond in any amount, finding without further explanation that his periodic DUIs, the most recent of which was 5

years old, "do reflect . . . present dangerousness even though the last was a few years ago" and that there was "a pattern of FTAs . . . [so] the Court is also going to find present flight risk."[1]

9. The IJ did not consider, mention, or weigh any evidence presented of Petitioner's rehabilitation or law-abidingness over the past 5 years, during which he has cared reliably and responsibly for his sick parents and become involved in his church. Neither did the judge weigh any other factors pursuant to *Matter of Guerra,* I&N Dec. 37 (BIA 2006). Instead, the judge summarily affirmed without further explanation that he believed the government met its burden to demonstrate Petitioner's danger and flight risk based on this history, the most recent of which is 5 years old.

10. The IJ's written order denying bond states curtly: "Order: Bond is denied." Exhibit D. No explanation or justification is provided therein.

11. Petitioner remains detained by Respondents in Adelanto, California. Petitioner is *prima facie* eligible for 42A cancellation of removal for certain permanent residents, but has yet to be scheduled for an individual hearing to examine the merits of his claim. Petitioner's counsel informed the IJ of such at his bond hearing. The IJ informed Petitioner "I don't know what happened with the merits hearing not being scheduled . . . I'll try to get a merits hearing scheduled for the Petitioner as soon as possible."

## **JURISDICTION AND VENUE**

12. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

[1] The transcript of Petitioner's bond hearing will be soon supplemented into the record once it becomes available.

13. The Court has jurisdiction to review IJ custody determinations for legal error, including whether an IJ's bond decision was arbitrary, applied the wrong legal standard, or violated due process. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). The habeas court's review of an IJ's determination of flight risk or danger is for abuse of discretion. *Id*. at 784-85.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

15. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

16. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in the United States District Court for the Central District of California, because Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, which is within the jurisdiction of this District. L.R. 120(d); 28 U.S.C. § 1391(b); *see also* 28 U.S.C. § 2241(d); *Palma v. Holder*, 2014 U.S. Dist. LEXIS 175721 (9th Cir. 2014).

**<u>REQUIREMENTS OF 28 U.S.C. § 2243</u>**

17. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

18. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

19. Petitioner, Manuel Salvador Diaz Gonzalez, is a 49-year-old native and citizen of Mexico who was granted lawful permanent residency in the United States on March 18, 1994 at 16 years old. He was convicted for possession of marijuana on June 27, 2007. Almost 20 years later, Petitioner left with his USC mother to visit a doctor for her benefit. On his return in 2026, Petitioner was found inadmissible to the United States due to his 2007 conviction, and placed into removal proceedings. Petitioner was detained as an arriving alien charged with inadmissibility.

20. Respondent James Janecka, Warden of the Adelanto ICE Processing Center, is Petitioner's immediate physical custodian and is sued in his official capacity. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

21. Respondent Todd Giles[2] is sued in his official capacity as the Director of the Los Angeles U.S. Immigration and Customs Enforcement Field Office, with responsibility over San

---

[2] On information and belief, Todd Giles is the current field office director of the Los Angles field office, although this could not be confirmed as that field office informed counsel on a phone call that they didn't have that information – the field office director's name.

Bernardino County in which Petitioner is detained. Respondent is a legal custodian of Petitioner and has authority to release him.

22. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Mullin is a legal custodian of Petitioner.

23. Respondent Todd Blanche is sued in his official capacity as Acting Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

24. Petitioner, a 49-year-old native and citizen of Mexico, was granted lawful permanent residency on March 18, 1994 when he was 16 years old, as a category LB2 LPR.[3] *See* Exhibit B at 22. Both of Petitioner's 86-year-old parents are United States citizens.

25. Petitioner was convicted in Idaho for possession of marijuana on June 27, 2007. *See* Exhibit A at 8.

26. Almost 20 years later, Petitioner left with his USC mother to visit a doctor for her. Exhibit B at 22.

27. Petitioner returned on January 10, 2026 at the Los Angeles International Airport in Los Angelas, California. He presented his Mexican passport and applied for admission as a

[3] Category LB2 encompasses alien children of certain legalized parents.

returning LPR. Petitioner was referred to passport secondary, and set a deferred inspection in Boise, Idaho for February 10, 2026. Exhibit B at 22.

28. Petitioner attended his deferred inspection, and was found inadmissible to the United States for this conviction under 8 U.S.C. § 1182(a)(2)(A)(i)(II) and placed into removal proceedings. Exhibit E.

29. Petitioner was detained as an inadmissible arriving alien.

30. Petitioner was kept in detention for 6 months until he was provided a *Rodriguez* bond hearing on August 26, 2026. A *Rodriguez* bond hearing is one automatically set by the government pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). There, the court reiterated that mandatory detention without bond available past 6 months raised serious due process concerns. The court determined, applying the doctrine of constitutional avoidance, that it was necessary to move such detainees to custody under 1226(a) at such a point, to grant long-term detainees review of the necessity of their custody at a bond hearing set for them wherein the government bore the burden to prove by clear and convincing evidence that the detainee is a danger to the community or flight risk.

31. Petitioner submitted a bond evidence packet in support of his release from custody, including: identity for his almost 90-year-old parents, Exhibit A at 13-15; declarations from himself and his United States citizen father, and medical records for both of his parents, clarifying the extent to which Petitioner cares for them, *Id.* at 16-107; letters of support indicating Petitioner has been rehabilitated and found God over the last 5 years *Id.* at 108-130; Petitioner's filed taxes and other documents which show his continuous presence for nearly a decade, *Id.* at 131-164; Petitioner's application for 42A cancellation of removal for certain permanent residents, based upon the hardship his parents would suffer without

his presence, *Id.* at 173-195; his form I-601A which he utilized to apply for a standalone 212(h) inadmissibility waiver,[4] *Id.* at 185-195; identity documents and the previous 3 years of filed taxes for his proposed bond sponsor, *Id.* at 196-217, and; proof of his compliance with court orders pursuant to his most recent conviction 5 years ago for driving under the influence. *Id.* at 230-237.

32. The government filed its evidence in two parts. The first part contained identity documents for Petitioner; his conviction records for possession of a controlled substance (marijuana) from about 20 years ago, conviction for possession of drug paraphernalia from 10 years ago, and; ICE's I-213 recorded when he was detained on February 10, 2026. Exhibit B.

33. The government's second evidence submission contained ICE's form I-213 (identical to the first submitted form), and; Petitioner's FBI rap sheet. Exhibit C. Petitioner's rap sheet reflects what Petitioner's family, friends, and coworkers represented: that he has been rehabilitated in the 5 years since his 2021 DUI conviction.

34. Petitioner's counsel represented to the Immigration Court that the government's burden of demonstrating ongoing dangerousness or flight risk, unmitigable by alternatives to detention or other conditions, could not be met by reliance alone on such criminal history which came to an abrupt end years ago. She argued that the proper consideration is whether

[4] Because Petitioner has a green card, waiving his inadmissibility would overcome the only charge brought against him and end his removal proceedings. 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application of . . . subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if . . . in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.").

Petitioner is a *current* danger and flight risk, not whether there is evidence he was one 10 or 20 years ago.

35. The judge presiding over the bond hearing denied Petitioner release on bond in any amount, finding his periodic DUIs "do reflect . . . present dangerousness even though the last was a few years ago" and that his failures to appear for or abide by court orders from about a decade ago and beyond demonstrated that he was a flight risk.

36. The judge did not explain, or indeed mention, any of the evidence Petitioner submitted in his bond evidence. The judge did not recognize or consider any of the evidence of Petitioner's rehabilitation since these offenses between 5 and 20 years old. Instead, the judge summarily affirmed without further explanation that he believed the government met its burden to demonstrate Petitioner's danger and flight risk based on this history, the most recent of which is 5 years old.

37. The IJ's written order denying bond likewise states curtly: "Order: Bond is denied." Exhibit D. No explanation or justification is provided.

38. Petitioner is *prima facie* eligible for 42A cancellation of removal for certain permanent residents, but has yet to be scheduled for an individual hearing to examine the merits of his claim. Petitioner's counsel informed the IJ of such at his bond hearing. The IJ informed Petitioner "I don't know what happened with the merits hearing not being scheduled . . . I'll try to get a merits hearing scheduled for the Petitioner as soon as possible."

39. Petitioner has now been in custody for over 6 months, while his parents who each depend on him profoundly have anguished, without an end in sight, and despite remaining a law-abiding citizen for years prior to his detention.

## LEGAL FRAMEWORK

40. The Supreme Court has stated that it "'is well established the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See Id.* at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

41. The Court has jurisdiction to review IJ custody determinations for legal error, including whether an IJ's bond decision was arbitrary, applied the wrong legal standard, or violated due process. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

42. A discretionary determination under 1226(a) is guided by the *Matter of Guerra* factors. I&N Dec. 37 (BIA 2006). Due process further requires the IJ to consider all relevant evidence in the record. See, *Matter of Guerra* (an IJ may consider "[a]ny evidence in the record that is probative and specific.") (emphasis added). Federal courts reviewing discretionary bond determinations do not reweigh the evidence, but they may determine whether the IJ applied the correct legal standard; they are not required to countenance a sham proceeding. *Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026).

43. Petitioner's *Rodriguez* bond hearing was violative of his due process right to liberty, as the judge failed to meaningfully consider Petitioner's presented evidence or apply the correct legal standard.

44. DHS counsel's argument ran through Petitioner's FBI rap sheet, and connected his criminal convictions to the viability of his 42A application for cancellation of removal for certain permanent residents. DHS counsel argued Petitioner would have to contest with his failures to appear from more than a decade ago to be granted his application. The argument is strained, as any such connection between this criminal history and his entitlement to relief is tenuous at best.[5]

45. The government presented Petitioner's DUI convictions from 2012, 2013, 2016, and 2021. Respondents presented no other evidence of Petitioner being dangerous from this decade, but presented as evidence of his flight risk that he was convicted of failing to appear in 2017. This substantially concluded the government's argument.

46. Petitioner's counsel, in response, presented evidence that Petitioner complied with court conditions and completed court ordered counseling and reeducation.

47. Petitioner's counsel noted that the evidence reflected no criminal history for Petitioner at all within the last 5 years. She noted that Petitioner had been a resident for 30 years, and after his approximately 1-week trip to Mexico, was scheduled a deferred inspection, which he attended. Petitioner's counsel noted that the Court needed to determine whether Petitioner was currently a danger or a flight risk, not whether he was 5 or more years ago.

[5] DHS counsel seems to be arguing that Petitioner's convictions could somehow disqualify him from receiving cancellation of removal under 8 U.S.C. 1229b(a). Under 1229b(b), applicants must demonstrate good moral character for 10 years preceding their application. There is no such requirement under 1229b(a). At any rate, the criminal history to which DHS counsel pointed as complicating his application was more than 10 years old.

She reasoned that his most recent actions were far more indicative of his danger or flight risk than criminal history, some of which is almost 30 years old.

48. Petitioner's presented evidence reflected plentiful letters of support from his family and friends attesting that Petitioner was rehabilitated – that he found God and reformed himself, in part to care of his sick parents.

49. Petitioner presented evidence, including his father's affidavit, reflecting that he assists them more than anyone else in their old age. Petitioner's mother suffers from dementia, and Petitioner is the only person she usually recognizes, and the only person to whom she listens, becoming withdrawn and noncompliant with others. Petitioner's mother often forgets he is detained. She asks about him "every 5 minutes" and when this is reexplained to her, she will cry for long periods of time. Exhibit A at 16-24 (affidavits of Manuel Diaz Gonzalez and his father).

50. Petitioner's father uses a wheelchair, and has a chronic intolerable pain in his knees, preventing him from walking. Petitioner sits him in the shower and bathes him, and moves him from his chair to the toilet, and cleans him afterwards. Petitioner's father's memory is fading like his mother's. *Id.* Petitioner ensures they both remember to take their medications. *Id.*

51. Petitioner "has turned his life around and found a true purpose to serve others." Exhibit A at 116.

52. The court in *Rodriguez v. Robbins* recognized and reiterated that "[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound." 804 F.3d 1060, 1069, 1078. Indeed, the burden imposed on Petitioner

to care for his ailing parents for 6 months festers every day, and becomes less justifiable by criminal history no more recent that 5 years old.

53. Evidence of criminal conduct becomes less probative of present danger as it becomes less current. *See Aguirre-Uribina v. Wilcox*, No. C18-1743-TSZ, 2019 WL 2161644, at *1 (W.D. Wash. May 17, 2019); *Singh v. Holder*, 638 F.3d at 1206 (finding that if a respondent has been at liberty and has led a law-abiding life, the predictive value of a past conviction diminishes over time) ("In such cases, denial of bond on the basis of criminal history alone may not be warranted."); *See also, Ceballos-Florez v. Leyva,* 1:26-cv-00446-DCN, Dkt. No. 16 at 4 (D. Idaho, July 31, 2026) ("[D]riving under the influence [is a] serious crime[]. However, [it does] not tend to show an obvious danger or risk of flight in the context of immigration proceedings."). Relying only upon Petitioner's 5 year old criminal history to support a current finding of dangerousness or flight risk, while ignoring any of his presented mitigating and more recent evidence, constitutes an abuse of discretion.

54. An IJ further abuses discretion when the decision leaves the reviewing court to speculate about how the evidence was viewed under the governing factors. *See Hurtado Gomez v. Hernandez*, 2:26-cv-02082-MLP Dkt. No. 11 at 15 (Citing *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. April 13, 2026)). Ninth Circuit law likewise requires consideration of the evidence in its entirety and a reasoned explanation adequate for judicial review. *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966–68 (9th Cir. 2006); see also *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) ("Post-hoc reconstruction is inadequate because, 'once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding.'") (citation omitted). Additionally, as several courts have found, "a noncitizen should not have

to appeal an IJ's decision to learn the rationale supporting it." *Hurtado Gomez v. Hernandez*, 2:26-cv-02082-MLP, Dkt. No. 11 at 12 (W.D. Wash., July 20, 2026); *See also Garcia Miranda v. Hernandez et al.*, 2:26-cv-00906-JNW Dkt. No. 12 at 12 (W.D. Wash., May 13, 2026) ("Simply acknowledging contrary evidence is not enough; the IJ must meaningfully engage with it.").

55. The IJ did little to clarify upon what his decision was based. The IJ stated, without further explanation, that Petitioner's DUI's "do reflect . . . present dangerousness even though the last was a few years ago." Such was the end of his analysis and reasoning presented for finding Petitioner a danger, no mention need be made of the more than 200 pages of evidence he submitted in his support directly contradicting such a decision. *See, e.g.,* Exhibit A at 33 ("in the past ten years, I have gone to AA classes. It was not court ordered, but I wanted to join to learn from others and hear their stories. About 4 years ago, I found Jesus. I joined a local church . . . I have repented from my past sins and have been reborn."); *Id.* at 109 (I have witnessed my brother's rehabilitation . . . now he has stayed clean of vices and away from negative friendships, surrounding himself with people who bring positive changes to his life."); *Id.* at 111 ("[H]e is no longer the person he once was. He has worked diligently to change his life for the better and has demonstrated a sincere commitment to personal growth and responsibility."); *Id.* at 114 ("I know my brother has made errors in his past, but now, I am a witness to his rehabilitation."); *Id.* at 116 ("He has turned his life around and found a true purpose to serve others."); *Id.* at 119 ("My brother in law Manuel does not drink, he does not smoke. He is a religious man who loves and cares about his family. He does not cause any trouble and in his free time likes to sing and garden."); *Id.* at 230-37 (A certificate of out-patient counseling in 2022, a certificate of

completion of his 2022 victim impact panel, and proof of no probation violations for his 2022 misdemeanor, and indeed no such violations for almost a decade).

56. The IJ made no mention of or explanation for the discredit of any of Petitioner's presented evidence of rehabilitation, or why his old criminal convictions reflected his presented dangerousness. Because the IJ did not engage with any evidence beyond DHS counsel's rap sheet. A reviewing court is left to speculate what evidence was rejected, overlooked, or deemed legally relevant or irrelevant. The Ninth Circuit has robustly enforced the requirement for articulated reasoning to ensure due process. *See Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) ("Due process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument" (quoting *Su Hwa She v. Holder*, 629 F.3d 958, 963 (9th Cir. 2010)).

57. In addition to failing to explain his reasoning, The IJ appears to not so much as considered it. The judge never so much as referenced any evidence in Petitioner's bond packet, which included the majority of his evidence of rehabilitation.

58. While the IJ is not required to *discuss* every piece of evidence, he is required to *consider* all the relevant evidence submitted. *See Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011). There is no indication the IJ actually reviewed or engaged with the evidence packet Petitioner presented, which totaled over 200 pages, but instead he summarily adopted the government's position, predicated upon their presented rap sheet. Indeed, rather than ever referring to or citing Petitioner's evidence, he merely asked whether he was applying for a 212(h) standalone waiver, which Petitioner Counsel clarified was already contained in his evidence packet.

59. When "[t]he Court is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors[,]" it "must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez*, 2026 WL 984151, at *3; *See*, *e.g.*, *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by a petitioner") (citation modified); *Miri v. Bondi*, 2026 WL 622302, at *8-9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an IJ did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (finding the failure to engage with evidence and absence of articulated reasoning was an abuse of discretion).

60. Courts have found that an IJ abuses their discretion when they make such summary findings without evidence of a reasoned explanation or meaningful engagement with the evidence. *See e.g., Vasquez Lopez v. Hernandez* --- F. Supp. 3d.—-, 2026 WL 984151, at 3. (W.D. Wash. April 13, 2026). While the IJ was not required to discuss every piece of evidence, he was required to consider all the relevant evidence submitted. *See Cole v. Holder*, 659 F. 3d 762, 771-72 (9th Cir. 2011).

61. An IJ in a bond hearing must apply the *Matter of Guerra* factors and weigh evidence appropriately: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the

offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry into the United States. *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The IJ did not consider any of this presented evidence, but relied exclusively and tersely on the FBI rap sheet presented by the government and summarily concluded that they therefore met their burden to prove he was a danger and a flight risk. *See Shevchuk v. Scott,* 2026 U.S. Dist. LEXIS 139292 (W.D. Wash., June 23, 2026) (ordering immediate release for an individual formerly addicted to methamphetamine where the IJ adopted as proof of flight risk the individual's failure to comply with court orders in criminal cases largely occurring before 2016, and without meaningfully weighing this history with Petitioner's mitigating evidence.").

62. Petitioner has been denied bond even after 6 months, without reason, as the Immigration Court has irrationally delayed the adjudication of his underlying removal claim. Despite Petitioner's counsel clearly addressing this issue with the Immigration Judge at Petitioner's bond hearing, the judge could do no better than confess he did not know what happened with scheduling the hearing, and indicated he would try to fix the issue. As three weeks have past since then, it appears no meaningful action has been taken to complete adjudication of his case. In sum, Petitioner is being kept in prolonged civil detention based on crimes from years past for which he has already served his sentences and rehabilitated without justification for his ongoing detention and delay in case processing.

63. Petitioner can not obtain meaningful relief via administrative appeal. Bond appeals are pending now before the BIA for hundreds of days on average, causing the issue of unlawful detention to be unjustifiably exaggerated, and indeed often mooted, by the time it is

addressed. Traditionally, EOIR and the BIA have prioritized detained respondents' cases to reduce time in custody. Despite the BIA increasingly accelerating adverse decisions across contexts, however, the detained docket appeals paradoxically has slowed. *Rodriguez Vasquez v. Bostock*, No. 3:25-cv-05240-TMC, slip op. at 1307 (W.D. Wash. Sept. 30, 2025) ("The BIA appeals process is long and often moots pending bond appeals before they are adjudicated. In 2024, EOIR data showed an average processing time of 204 days for bond appeals. EOIR data between 2015 and 2024 also showed that 200 bond appeal cases took a year or longer to resolve.) (internal citations omitted). *See Picado v. Hyde*, No. 26-cv-065, 2026 WL 352691, at *5-6 (D.R.I., Feb. 2026) ("This Court will not require [Petitioner] to sit in an ICE detention facility for six months while he awaits a BIA decision."); *see also Rosales v. Simon*, No, 1:26-cv-86, 2026 WL 688858, at *5 (E.D. Va., Mar. 2026); *Zheng v. Rokosky*, No. 26-cv-01689, 2026 WL 800203, at *3 (D.N.J., Mar. 2026). Such conditions are why courts "have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *11-12 (W.D. Wash. Dec. 8, 2025) (citing *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019).

64. It should also be noted that, consistent with broader trends of the Immigration Courts, the Board of Immigration Appeals has recently issued far fewer decisions granting relief to

noncitizens, particularly in appeals challenging immigration detention and bond determinations.[6]

65. This has led some courts to conclude that administrative remedies in the immigration system appear "no longer efficacious." *Garcia Ortiz v. Henkey*, 2026 WL 948275, 2026 U.S. Dist. LEXIS 78932 at *7 (D. Idaho, April 7, 2026) ("Petitioner has been detained for almost four months. Mandating administrative exhaustion would be a "futile gesture" that prolongs this injury without creating a meaningful opportunity for the agency to correct its mistake. The Court will waive administrative exhaustion requirements."); *See also, Chavez Ochoa v. Mason*, No. 2:26-cv-00130, 2026 WL 541144, at *2 n.4 (S.D.W. Va., Feb. 2026). Bond appeals to the BIA have undergone a dramatic shift toward favoring the government according to aggregated data, and do not reflect a neutral adjudicating body at this point. These trends are consistent with the Attorney General' conditioning of BIA members' continued employment on their decision-making.[7]

66. This lack of reviewing, reasoning, or justification causing Petitioner's ongoing civil detention is violative of Petitioner's right to due process, and is incompatible with a bond

[6] Jayashri Srikantiah & Rajan Lukoe, *The Board of Immigration Appeals Under the Second Trump Administration: An Empirical Analysis of Grant Rates and DHS Appellate Behavior* (Mar. 23, 2026) at 1 and 8.7.1 (Analyzing data reflecting an overall drop in alien-favorable appeals in the 9th Circuit from about 20% to about 10%, and in alien-favorable outcomes in alien appeals of bond outcomes from about 5% to about 3%.).

[7] Margy O'Herron & Neema Jyothiprakash, The Empty Promise of the Board of Immigration Appeals, Brennan Ctr. for Just. (Apr. 10, 2026), https://www.brennancenter.org/our-work/research-reports/empty-promise-board-immigration-appeals. "The attorney general has quietly exerted unprecedented influence over the board's opinions, which include a record number of decisions that change the rules for immigrants who seek release from detention, relief from deportation, or permanent status in the country . . . Added to great increases in the fees for filing appeals and the firing of judges whom DOJ leadership thought would not support their agenda, the changes restrict immigrants' rights and diminish judicial impartiality, undermining due process and jeopardizing immigrants' liberty and even their lives."

decision applying the proper legal standard. Petitioner therefore asks this Court to order his immediate release.

## CLAIMS FOR RELIEF

### COUNT ONE

67. Petitioners incorporate by reference the allegations of fact set forth in the preceding paragraphs

68. The discretionary detention provision at 8 U.S.C. § 1226(a)(2) requires an individualized assessment of the positive and negative factors militating for and against release on bond.

69. Respondents here violate the INA by holding Petitioner in custody without such an individualized assessment with legal standards cognizable thereunder.

### COUNT TWO

70. Petitioners incorporate by reference the allegations of fact set forth in the preceding paragraphs.

71. Respondents violated Petitioner's due process rights in the ways outlined above, including by failing to provide him with a reasoned decision relying on the government to prove Petitioner's *present* dangerousness by clear and convincing evidence.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Stay Petitioner's transportation to another jurisdiction until this Court resolves his petition for a writ of habeas corpus;

(3) Issue an Order to Show Cause ordering Respondents to show why this Petition should not be granted within three days.

(4) Declare that Petitioner's detention without evidence reviewed, reason presented, or proper legal standard applied, is violative of the due process clause of the Constitution.

(5) Declare that Petitioner's detention is unlawful.

(6) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately;

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.

Respectfully submitted this 17th day of September 2026,

*/s/ Mariana L. Hanna*
Mariana L. Hanna
Attorney for Petitioner

*/s/ Jacob C. Rourk*
Jacob C. Rourk
Ramirez-Smith Law
Proposed Pro Hac Vice Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Manuel Salvador Diaz Gonzalez, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully submitted this 17th day of September 2026,

*/s/ Mariana L. Hanna*
Mariana L. Hanna
Attorney for Petitioner

*/s/ Jacob C. Rourk*
Jacob C. Rourk
Ramirez-Smith Law
Proposed Pro Hac Vice Attorney for Petitioner